UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUSAN M. HJELTNESS,<br><br>  Petitioner,<br><br> vs.<br><br>JAVIER CAVAZOS,<br><br>  Respondent. | Case No: C 10-1858 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner Susan M. Hjeltness' pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging her 2007 burglary conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition is DENIED.

**I.    BACKGROUND**

   **A.    PROCEDURAL SUMMARY**

Petitioner was charged in an amended information with three counts of second-degree burglary (counts one, three and four) and one count of first-degree burglary (count two). Cal. Penal Code §§ 459, 460. As to count one, it was alleged that Petitioner took property in excess of $50,000. Id. § 12022.6(a)(1). As to count two it was alleged that "a person not an accomplice, namely Blanca Esquivel, was present in the residence during the commission of the burglary." Id. § 667.5(c)(21). (CT 114, 155.)

A jury trial commenced in the Santa Clara County Superior Court on April 23, 2007. On May 10, 2007, petitioner was found guilty of all counts and the allegations were found true. (CT 114, 155.)  On August 31, 2007, petitioner was sentenced to six years in state prison. (CT 197.)[1]

Petitioner appealed the judgment to the California Court of Appeal.  (Ans, Exs. 1-3.)  In an unpublished opinion, see People v. Hjeltness, No. H032066, 2009 WL 498333 (Cal. Ct. App. Feb. 27, 2009), the Court of Appeal affirmed the judgment.  (Ans. Ex. 4.)   On May 20, 2009, the California Supreme Court denied petitioner's petition for review.  (Id. Exs. 5, 6.)  Petitioner then filed a habeas corpus petition in the Santa Clara County Superior Court, which denied the petition on December 31, 2009.  (Id. Exs. 7, 8.)  The California Supreme Court also denied the habeas petition on March 24, 2010.  (Id. Ex. 9.)  Petitioner thereafter filed a habeas petition in this Court. Dkt. 1.

As grounds for federal habeas relief, Petitioner presents the following claims: (1) ineffective assistance of defense, sentencing and appellate counsel; (2) prosecutorial misconduct; (3) judicial misconduct; (4) a Massiah violation; (5) actual innocence; and (6) insufficiency of the evidence.[2]

**B.    STATEMENT OF THE CASE**

The California Court of Appeal summarized the case against Petitioner as follows:

> Posing as a home buyer with her sons and boyfriend-accomplice [John Chacon], [Petitioner] visited "open houses" hosted by real estate agents and stole collectible figurines, perfume, and electronics.  Of the four charged burglaries, one of the homes was inhabited and three were uninhabited but still furnished.  An inference from the evidence is that [Petitioner] sometimes stole while at an open house and sometimes stole at a later time after unlocking entry points while at an open house.

---

[1] Petitioner has seen been released from custody.  Dkt 27.

[2] Only two of these claims were presented on direct appellate review.  The remaining claims were presented in a habeas petition which were denied in a brief order by the trial court.  The trial court's order stated that: "Each section of the petition consists of a litany of innumerable claims supported by nothing more than Petitioner's arguments.  None of Petitioner's unsupported claims, even if accepted as true, would undermine the substantial evidence of her guilt."  (Ans., Ex. 8.)  The California Supreme Court summarily denied Petitioner's state habeas petition.  (Id., Ex. 9.)

> [Petitioner] testified and claimed to be a legitimate home buyer, a long-time collector of the [Hummel] figurines found in her possession (purchasing some from her boyfriend), and an owner of the perfume found in her possession. She added that her boyfriend had purchased the electronics found in her possession.

(Ans., Ex. 4 at 2.)

The burglaries charged in the amended information involved four homes located at: 5397 Vicenza Way, San Jose, California (count one); 5490 Arezzo Way, San Jose, California (count two); 1738 Lucca Place, San Jose, California (count three); and 1735 Lucca Place, San Jose, California (count four). Substantial evidence of Petitioner's guilt was presented at trial. Real estate agents and homeowners testified that they noticed property missing after Petitioner had visited the houses with agents and during open houses, either when the houses were closed (but accessible through a lockbox) or when they were actually shown by agents. In at least one instance, Petitioner purposefully distracted the agent in order to steal property in the home. Property stolen from the homes, including numerous Hummel figurines (including one with the homeowner's name on it) and bottles of Chanel perfume, were found in Petitioner's home, which was searched pursuant to a search warrant. Stolen figurines also were found in suitcases which Chacon had sent to his niece.

## II. STANDARD OF REVIEW

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).

## III. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). There is a two-prong test applicable to claims for ineffective assistance of counsel. Id. at 688. First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id.; see also Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001). The defendant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy. Harrington v. Richter, 131 S. Ct. 770, 787 (2011); United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 468 U.S. at 687.

To satisfy the second prong, petitioner must establish that he was also prejudiced by counsel's substandard performance. See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694). Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693). Judicial scrutiny of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. Strickland, 466 U.S. at 697.

#### 1. Trial Counsel

Petitioner claims her trial counsel rendered ineffective assistance by failing to: (1) find exonerating evidence; (2) call certain witnesses; (3) obtain information relating to

the lockboxes; (4) present DNA and fingerprint evidence; (5) seek a change of venue: (6) withdraw as counsel when a conflict arose; and (7) challenge the validity of the search warrant. The California Supreme Court summarily denied these claims. On habeas review, the Court likewise finds, based on its independent review of the record, that the state supreme court's decision is reasonable and that Petitioner's claims of ineffective assistance of counsel are without merit.

### a) *Exonerating Evidence*

Petitioner faults her trial counsel for failing to locate exonerating evidence, but fails to specify what particular allegedly exonerating evidence existed, how it could have been obtained, or how it would have exonerated her. Conclusory assertions of federal constitutional violations without specifics do not state a basis for federal habeas relief. Mayle v. Felix, 545 U.S. 644, 655 (2005). Relief on this claim is therefore DENIED.

### b) *Additional Witnesses*

Petitioner claims that her counsel should have called her friends as witnesses to testify that she legally purchased or owned the stolen items in question. However, in the absence of declarations from the witnesses demonstrating what they would have said at trial, Petitioner cannot meet her burden to affirmatively show prejudice from the failure to call the witnesses. E.g. Matylinsky v. Budge, 577 F.3d 1083, 1096-97 (9th Cir. 2009) (without informing the court as to the nature of the testimony, petitioner's general statement in the petition that 41 witnesses would have testified to his good character failed to show that counsel's decision to call a few select character witnesses was unreasonable); Allen v. Woodford, 366 F.3d 823, 846 n.2 (9th Cir. 2004) ("the district court correctly disregarded the failure to call [three named witnesses], because Allen failed to make a showing that they would have testified if counsel had pursued them as witnesses"). Moreover, Petitioner fails to show how such testimony—which in any event was subject to impeachment due to their friendship with her—would have overcome the testimony of the homeowners who identified that many of the stolen items seized from Petitioner's house belonged to them, or the testimony of homeowners and real estate agents who testified that they noticed items

were missing soon after Petitioner visited the houses.[3]  Relief on this claim is therefore DENIED.

### c)    *Lockbox and DNA Fingerprint Evidence*

Petitioner makes a conclusory argument that her counsel was ineffective for failing to: (1) confirm the dates that Petitioner visited the various homes using the lockboxes; and (2) presenting fingerprint or DNA evidence purportedly to show that she did not steal the items at issue.  However, Petitioner fails to demonstrate how this evidence would have affected her case, particularly in light of her acknowledgement that she visited the homes in question and that the majority of homes she toured were open houses.  RT 647, 649-50, 655-56, 671.  With regard to the lockboxes, such evidence would, at most, have shown that other persons had access to the houses, or that they were more accessible at certain times.  Similarly, the presence of other person's fingerprints or DNA on the stolen items would not, standing alone, exonerate her.  Such evidence would not undermine the fact that the stolen items were found in Petitioner's possession, or that many of the items were stolen without the use of a lockbox key.  Relief on these claims is therefore DENIED.

### d)    *Change of Venue*

"The standards governing a change of venue ultimately derive from the due process clause of the fourteenth amendment which safeguards a defendant's sixth amendment right to be tried by 'a panel of impartial, "indifferent" jurors.'"  Harris v. Pulley, 885 F.2d 1354, 1361 (9th Cir. 1988) (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)).  If the trial court is unable to seat an impartial jury owing to "prejudicial pretrial publicity or an inflamed community atmosphere," due process requires that the trial court grant defendant's motion for a change of venue.  Id. (quoting Rideau v. Louisana, 373 U.S. 723, 726 (1963)).

The prejudicial effect of pervasive publicity is tested under the presumed prejudice standard or the actual prejudice standard.  Id.  Under the presumed prejudice standard,

---

[3] Petitioner also argues she needed an expert to trace the purchases of Hummel figurines to show that Chacon actual stole them.  Assuming that such an expert exists, Petitioner has not demonstrated how such an expert would have assisted her defense or changed the outcome at trial.

"prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." Id. (quoting Rideau v. State of Louisiana, 373 U.S. 723, 726-27 (1963).  Given that virtually every case of any consequence will be the subject of some press attention, the presumed prejudice principle is rarely applicable, and as such, is reserved for an "extreme situation." Id.  Under the actual prejudice standard, a court must determine if the jurors demonstrated actual partiality or hostility that could not be laid aside. Id. at 1363 (quoting Murphy v. Florida, 421 U.S. 794, 800 (1975)).  "[J]urors need not, however, be totally ignorant of the facts and issues involved." Id. (quoting Murphy, 421 U.S. at 800).  "The relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." Id. at 1364 (quoting Patton v. Yount, 467 U.S. 1025, 1035 (1984)).

Here, Petitioner alleges that her counsel should have sought a change of venue. However, she fails to articulate what would have constituted the factual basis of such a motion, other than to vaguely assert that there was "extensive media coverage" of the case. No evidence has been presented to support even a remote possibility that media coverage caused her any prejudice, or that she was not tried by a panel of "impartial, indifferent jurors." Harris, 885 F.2d at 1361 (citation and quotation marks omitted).  Relief on this claim is therefore DENIED.

### *e)* *Conflict*

Petitioner argues that her counsel had a conflict of interest in this case, rendering him ineffective.  To prevail on this claim, Petitioner must show that "(1) [her] counsel actively represented conflicting interests; and (2) an actual conflict of interest adversely affected counsel's performance." Rich v. Calderon, 187 F.3d 1064, 1069 (9th Cir. 1999) (citations omitted); United States v. Mett, 65 F.3d 1531, 1535-36 (9th Cir. 1995). Petitioner fails to demonstrate the nature of the alleged conflict or how it impaired her case. Relief on this claim is therefore DENIED.

### *f)* *Validity of the Search*

Petitioner summarily alleges that counsel was ineffective in failing to challenge the search of her home. However, she provides no details or supporting information and fails to demonstrate that a motion to suppress would have been successful. By failing to identify such information, Petitioner necessarily fails to show that trial counsel's performance was deficient or that the alleged deficiency resulted in prejudice. See Gallego v. McDaniel, 124 F.3d 1065, 1077 (9th Cir. 1997). Relief on this claim is therefore DENIED.

Petitioner's ostensible free-standing Fourth Amendment claim regarding the search is also without merit because it is barred from review. Under Stone v. Powell, 428 U.S. 465, 481-82, 494 (1976), federal habeas review of Fourth Amendment claims is barred unless the state did not provide an opportunity for full and fair litigation of those claims. The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims. See Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990) (whether or not defendant litigated Fourth Amendment claim in state court is irrelevant if he had opportunity to do so under California law). California state procedure provided an opportunity for full litigation of Petitioner's Fourth Amendment claim. See id.; Cal. Pen. Code § 1538.5. As such, any claim predicated on the validity of the search must also be DENIED.

### 2. Sentencing Counsel

Petitioner complains that sentencing counsel did not make a motion for a new trial. However, Petitioner fails to articulate the grounds for such a motion or demonstrate that it would likely have been successful. The state appellate court's denial of such claim was, therefore, reasonable. Accordingly, this claim is also DENIED because it does not meet the specificity requirements of Mayle, 545 U.S. at 655.

### 3. Appellate Counsel

A claim of ineffective assistance of appellate counsel is reviewed according to the standard set forth in Strickland. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). A

defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694).

Petitioner's claim is entirely conclusory, as she makes no showing of either deficient performance or prejudice. Specifically, Petitioner claims, without elaboration, that appellate counsel "used up" all the filing extensions. This claim lacks the requisite specificity required under Mayle. In addition, Petitioner fails to demonstrate how the alleged lack of a further extension affected her appeal, let alone, precluded her from prevailing on appeal.

Petitioner also alleges that appellate counsel should have found legal support for the claim that a home placed for sale cannot be considered occupied for purposes of a burglary. The Court of Appeal analyzed the relevant legal authorities and flatly rejected this defense theory. Ex. 3. Appellate counsel thus cannot be faulted for failing to cite authority for a proposition that is unsupported by the law. Even if such authority existed, which has not been demonstrated, the fact remains that the Court of Appeal ruled against Petitioner. On habeas review, federal courts are bound by state court's interpretations of state law. Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000). This claim is therefore DENIED.

### B. PROSECUTORIAL MISCONDUCT

Petitioner claims that the prosecutor engaged in misconduct by: (1) failing to turn over fingerprint and DNA evidence; (2) badgering witnesses; (3) requesting bail in excess of $1 million; and (4) failing to discuss the results of her polygraph examination.

To show that the prosecution engaged in misconduct of a constitutional magnitude, a habeas petitioner must show that such conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation and internal quotation omitted). Under Darden, the threshold issue is whether the prosecutor's conduct was improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th

Cir. 2005).

### 1. Fingerprint and DNA Evidence

To succeed on a failure to disclose evidence claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "[T]here is never a real [failure to disclose violation] unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Id. at 281.

Petitioner has not met the Strickler test. As a threshold matter, Petitioner's assertion that such evidence actually existed is unsubstantiated and entirely speculative. In addition, Petitioner has not shown that such evidence would have been exculpatory, impeaching or would have aided her defense. Id. at 281-82. Even if fingerprint or DNA evidence relating to other persons existed, there is no showing how this evidence would have undermined the highly inculpatory fact that the police, among other things, found the stolen items in her house. Petitioner has not shown prejudice or that her trial was constitutionally unfair. Relief on this claim is therefore DENIED.

### 2. Badgering Witnesses

Petitioner alleges that the prosecutor yelled at two witnesses. This claim likewise fails. Petitioner has not shown the extent of such alleged "yelling" or how specifically it affected the witnesses' testimony. Without such supporting details, Petitioner has not shown that she was deprived of a fair trial in violation of due process. Mayle, 545 U.S. at 655. Relief on this claim is therefore DENIED.

### 3. Excessive Bail

Petitioner claims that the prosecutor's request for $1 million bail amounted to misconduct. This claim is meritless. The "custody" that is subject to challenge in this federal habeas proceeding resulted from her conviction, not the bail order. Any challenge to the bail order has been rendered moot by Petitioner's subsequent conviction on the

charges alleged against her, meaning that Petitioner can only now challenge the conviction that resulted in her subsequent custody in this action. See 28 U.S.C. § 2254(a).

The above notwithstanding, Petitioner's claim fails for various other reasons. First, there is no clearly established federal law that a prosecutor's request for any bail amount is per se unconstitutional, violates due process or constitutes misconduct. Second, Petitioner has offered only conclusory and undetailed allegations that the requested amount was excessive in her specific circumstances. Equally conclusory, unsupported and unavailing is her claim that the prosecutor's request was an attempt to impair, or that it succeeded in impairing, her right to a fair trial. Finally, Petitioner has not articulated any error in her bail proceedings, or that she was denied due process. Relief on this claim is therefore DENIED.

### 4. Polygraph Evidence

Petitioner asserts that the prosecutor failed to discuss the fact that she "passed" her polygraph examination. This claim fails because she has not asserted, much less shown, that the prosecutor withheld such evidence, that such evidence would have been admissible, that defense counsel could have presented such evidence, or what statements made during the examination support her defense. Mayle, 545 U.S. at 655. On this record, Petitioner has not shown misconduct or prejudice therefrom. Relief on this claim is DENIED.

### 5. Presentation of False Testimony

Petitioner claims that the prosecutor knowingly presented false testimony. There is no evidence to support this claim. The record shows only that a prosecution witness, Mary Smith, one of the homeowners, was confused as to the dates when she possessed certain items. This does not establish that the prosecution knowingly presented false evidence. In addition, any allegation that the prosecution acted knowingly is undermined by the fact the prosecutor admitted that there was a discrepancy in Ms. Smith's testimony about the dates. (Ans., Ex. 10, Vol. 5 at 812.) Ms. Smith's purported unreliability also was presented to the jury, which was free to take her memory into account when assessing her credibility. Relief on this claim is DENIED.

### C. JUDICIAL MISCONDUCT

Petitioner alleges that the trial court committed misconduct, which violated her constitutional right to a fair trial. A criminal defendant has a due process right to a fair and impartial judge. In re Murchison, 349 U.S. 133, 136 (1955). A judge may violate this right if he or she demonstrates actual bias or appears to advocate for one side in the proceedings. See Taylor v. Hayes, 418 U.S. 488, 501-504 (1974). Nonetheless, it is extremely difficult for a petitioner to establish judicial misconduct in the context of federal habeas review. Reviewing courts "abide by the general presumption that judges are unbiased and honest." Ortiz v. Stewart, 149 F.3d 923, 938 (9th Cir. 1998). In order to overcome this presumption, the trial judge must engage in an "extremely high level of interference" that creates "a pervasive climate of partiality and unfairness." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (citation and quotation marks omitted). On federal habeas review, the question is not just whether there was misconduct, but whether the judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Id. (citation omitted). None of Plaintiff's allegations come remotely close to satisfying this standard.

First, Petitioner complains that the trial court's bail was excessive and that it should have replaced her allegedly ineffective counsel. The Court has discussed both of these claims above and has found them to be without merit.

Next, Petitioner asserts that the trial court should have struck the special-allegation finding that made the first degree burglary conviction a violent felony, which, in turn, limited her accrual of worktime credits. Under People v. Romero, 13 Cal.4th 497 (1996), a California sentencing court may, in its discretion, strike a prior felony conviction allegation "in furtherance of justice." On direct appeal, the Court of Appeal held that the trial court appropriately weighed the considerations relevant to striking a conviction under Romero. Petitioner has not shown that such decision is contrary to or amounts to an unreasonable application of federal law. In addition, whether the trial court correctly exercised its discretion in refusing to strike a conviction under Romero is a matter of state, not federal,

- 13 -

1 law.  Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) (federal habeas challenge to the denial of a Romero motion is a state law claim that is barred from review in a federal habeas proceeding), vacated on other grounds, Mayle v. Brown, 538 U.S. 901 (2003).[4]

Petitioner alleges that the trial court did not investigate allegations that some jurors slept during the proceedings.  Assuming the truth of that allegation, Petitioner has not shown that any juror was inattentive during any particular part of, let alone essential portions, of the trial, and was thereby unable to fairly consider the evidence.  See United States v. Barrett, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983).

Finally, Petitioner claims that the trial court made disparaging remarks about her.  She does not specify what remarks were made or how it affected her trial, if at all.  Accordingly, this undetailed and conclusory claim is without merit because it does not meet the specificity requirements of Mayle, 545 U.S. at 655.

In sum, the Court finds no merit to any of Petitioner's claims of judicial misconduct and relief on said claim is therefore DENIED.

### D.   INSTRUCTIONAL ERROR

At trial, the prosecution introduced evidence that Petitioner committed an uncharged offense; i.e., the theft of Llrado figurines from 1735 Lucca Place, San Jose, California.  The jury was instructed that it could consider this evidence if it found that the prosecution had established by a preponderance of the evidence that Petitioner had committed the uncharged offense.  Petitioner claims that this instruction (and others) may have confused the jury and allowed it to find an element of a charged burglary true by a preponderance of the evidence instead of applying the "beyond a reasonable doubt" standard.[5]

---

[4] For the same reasons, Petitioner's contention that the court should have imposed concurrent as opposed to consecutive sentence fails to state a claim for habeas relief.  "The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).

[5] Petitioner alleges that the trial court engaged in misconduct by giving confusing jury instructions.  Given the basis for this claim, it is more appropriately classified as a claim of instructional error.

A challenge to jury instructions generally does not state a federal constitutional claim. Estelle v. McGuire, 502 U.S. 62, 72 (1991). To obtain federal habeas relief based on instructional error, the petitioner must demonstrate "that an erroneous instruction so infected the entire trial that the resulting conviction violates due process." Id. In making its determination, the Court must evaluate the challenged jury instructions "in the context of the overall charge to the jury as a component of the entire trial process." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).

The Court of Appeal considered and rejected Petitioner's claim of jury instruction error, as follows:

> [Petitioner] contends that the trial court improperly instructed the jury because "the preponderance standard set forth in CALCRIM No. 375 conflicts with the general circumstantial evidence instructions CALCRIM Nos. 224 and 225 [so as to dilute] the prosecution's burden of proof and were not clear enough to permit the jury to convict . . . under the proper legal standard." We disagree.
>
> CALCRIM No. 375 not only limited the purposes for which the evidence could be considered, but clearly provided the following explanation to the jury regarding burden of proof: "If you conclude that the [Petitioner] committed the uncharged act, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the [Petitioner] is guilty of burglary. The People must still prove each element and each charge beyond a reasonable doubt." Thus, the effect of CALCRIM No. 375 was merely to permit the jury to draw the inference that [Petitioner] had a felonious intent or plan or scheme, assuming the uncharged act was established by a preponderance of the evidence. The jury would still have to determine whether all the elements of the charge were proven beyond a reasonable doubt, as the instruction plainly stated.

(Ans., Ex. 4 at 6-7.)

Petitioner's instructional error claim fails because she has not shown juror confusion. First, the instruction protected Petitioner's due process rights in that it meticulously limited the jury's use of such evidence. The instruction clearly stated that the evidence was insufficient on its own to prove Petitioner's guilt, and that the prosecution retained the burden of proving Petitioner's guilt on the charged offenses beyond a

1 reasonable doubt.  This Court must presume that the jury adhered to its instructions, and
2 correctly weighed the evidence according to the correct standards of proof.  See Richardson
3 v. Marsh, 481 U.S. 200, 211 (1987).  Considering this instruction in the broader context of
4 the instructions as a whole and the entire trial record, the Court concludes that the
5 instructions did not violate Petitioner's constitutional rights.  Accordingly, relief on this
6 claim is DENIED.

### E. MASSIAH CLAIM

Petitioner raises a claim under Massiah v. United States, 377 U.S. 201 (1964), which holds that once a defendant's Sixth Amendment right to counsel has attached, the government may not deliberately elicit incriminating statements from the defendant outside the presence of counsel.  Petitioner asserts that her Massiah rights were violated when the police spoke with real estate agents during open houses, and were "unconstitutionally suggestive" that Petitioner was responsible for the crimes.  However, Massiah forbids the use of a defendant's statements, not the statements of other witnesses.  377 U.S. at 206-07; Brewer v. Williams, 430 U.S. 387, 400-01 (1977).  Because this claim is based on the statements of other witnesses, Petitioner has not shown a violation of her Massiah rights.  Accordingly, relief on this claim is DENIED.

### F. ACTUAL INNOCENCE

Petitioner claims that she is actually innocent.  Her claim is based on (1) Chacon's admissions that he alone stole the items, and (2) her assertion that the prosecution's witnesses were not credible.  Stated another way, Petitioner asserts that the jury should have believed her defense rather than the prosecution's case.  This claim is in essence a challenge to the jury's credibility determination in favor of the prosecution.  A jury's credibility determinations, however, are entitled to near-total deference.  Jackson v. Virginia, 443 U.S. 307, 326 (1979).  Indeed, if confronted by a record that supports conflicting inferences, such as the instant case, a federal habeas court "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Id.  Viewing

1 Petitioner's arguments under this standard, this Court must defer to the jury's credibility
2 determination in favor of the prosecution's arguments and evidence, and its rejection of
3 Petitioner's defense. Accordingly, relied on this claim is DENIED.

### G. SUFFICIENCY OF THE EVIDENCE

Petitioner claims that the evidence was not sufficient to show that she committed first degree burglary. More specifically, she contends that when a house is offered for sale, it cannot be deemed inhabited under the burglary statute. The California Court of Appeal rejected the claim because the mere fact that "the public was temporarily invited inside [the houses for sale] does not alter" the pivotal fact that the houseowner inhabited the dwelling. (Ans., Ex. 4 at 4.)   This Court is bound by the state appellate court's determination that the dwellings were "inhabited" under the state burglary law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Petitioner's sufficiency of the evidence claim is therefore DENIED.

### CONCLUSION

The state court's adjudication of Petitioner's habeas claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated: September 30, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge